

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

SEP 14 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| ALAN KYLE BOZEMAN | CIVIL ACTION NO. 10-973 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| LIFE INSURANCE CO. OF NORTH AMERICA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are cross-motions for partial summary judgment filed by the Plaintiff, Alan Kyle Bozeman[1] ("Bozeman"), and the Defendant, Life Insurance Company of North America ("LINA").  [Record Documents 14 and 17].  Both motions center on whether Bozeman's state law claim for long term disability benefits is preempted by ERISA.  Bozeman had two disability policies: one group policy during his employment which he converted to a second individual policy when his employment ended. In order to resolve the motions before it, this Court must decide:  (1)  what policy was implicated by Bozeman's claim for disability-- the group policy or the individual policy-- and (2) whether that policy was governed by ERISA.  Because the Court finds that the record before it does not provide the Court with sufficient evidence to resolve these issues and for the reasons stated

---

[1] At the outset, the Court notes that Bozeman passed away on December 30, 2010.  Bozeman's father, Martin Ray Bozeman, has been substituted as the plaintiff in this matter.

herein, both motions for partial summary judgment [Record Documents 14 and 17] shall be **DENIED** without prejudice.

I.    Factual and Procedural Background.

In July of 2002, Bozeman began working for Scientific Games, Inc. as a lottery game designer. While there, he was insured under a group long-term disability insurance plan provided by Scientific Games and issued by LINA, or its predecessor, Cigna. Near the end of January of 2006, Bozeman's employment with Scientific Games was terminated, although the parties disagree about which day was Bozeman's last day of employment. Relying on a Telephonic Report of Claim, LINA contends Bozeman's last day of work was January 27, 2006. [Record Document 17, Exhibit 3, p. 2]. Meanwhile, Bozeman argues his last day of employment was January 26, 2006, but concedes it could have been January 27, 2006.

Following the termination of his employment with Scientific Games, Bozeman converted his group long-term disability policy to an individual long-term disability policy. The parties dispute when the group policy coverage ended and the individual coverage began. Relying on a form completed by Bozeman's employer, Scientific Games, LINA asserts that Bozeman's group policy coverage ended on January 31, 2006, and thus, the new plan became effective on February 1, 2006. [Record Document 17, Exhibit 3, p. 5]. Bozeman, on the other hand, relying on the

insurance policy documents themselves, asserts that the group policy coverage ended the day after his last day worked: "Once the required premium is paid, your insurance will become effective on the date following the date of your termination from your employer." [Record Document 19, Exhibit 2, p. 35]. Additionally, an internal document generated by LINA also states that the date used to calculate the date of the new policy is the "[f]irst day after last day worked." [Record Document 19, Exhibit 2, p. 41]. Using LINA's date of January 27, 2006 as the last day worked, it seems the group policy coverage would have terminated and the new individual policy would have become effective on January 28, 2006. [Record Document 19, Exhibit 2, p. 41].

Once he converted to the individual long-term disability policy, Bozeman asserts that Scientific Games was not involved in the policy in any manner and that he paid all premiums directly to LINA. Indeed, in his statement of unconstested facts, Bozeman contends that Scientific Games had no involvement in the "collection of premiums, administration of the policy, or submission of the claims" and did not profit from Bozeman's conversion policy. [Record Document 14, Exhibit 3]. LINA neither denies nor controverts these facts in its cross-motion for summary judgment or in its statement of uncontested facts, as required by Local Rule 56.2.[2] For that

---

[2] Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to

reason, those facts are deemed admitted. See Templet v. HydroChem Inc., 367 F.3d 473, 480 (5th Cir. 2004).

In 2006, Bozeman was diagnosed with HIV, although it is unclear from the record when exactly that occurred. A nurse intake form from the LSU Health Sciences Center Viral Disease Clinic, dated March 27, 2006, reflects that Bozeman's HIV test and diagnosis date was January 2006, however, a specific date in January is not provided. [Record Document 17, Exhibit 3, p. 6]. Relying on a Medical Request Form [Record Document 17, Exhibit 3, p. 7], LINA further alleges that Dr. Ben Henderson began treating Bozeman for HIV on January 30, 2006. However, after reviewing the Medical Request Form, it appears to the Court that Dr. Henderson actually stated he first treated Bozeman on January 30, 2008, not 2006 as LINA claims.

In 2007, Bozeman applied for disability benefits. Relying on a Telephonic Report of Claim, LINA argues that Bozeman described his disabling condition as "HIV" and stated that the date of illness was January 29, 2006. [Record Document 17, Exhibit 3, p. 2]. This telephonic report also reflects that Bozeman's last day of

---

Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

work was January 27, 2006, and the first day on which he was unable to work was January 28, 2006.  However, it is unclear from the record who filled out this telephonic report and who or how the information was provided.  Bozeman asserts that there is no evidence he made this telephonic report at all and, rather, the best evidence of his claim for benefits is the actual application he submitted. Unfortunately, that document has not been provided to the Court.  Further troubling to the Court is that although the telephonic report contains a certification provision bearing a space for the claimant's signature, Bozeman's signature is notably absent on this particular form.  In addition, the telephonic report contains seemingly erroneous information.  For example, it states that Bozeman's date of hire at Scientific Games was June 5, 2006, although this date is clearly incorrect, as he had been terminated from the company in January of 2006.  Thus, the Court questions the accuracy of the information set forth in the report, particularly in the absence of any information regarding who completed the form and who provided the information contained therein.

Nonetheless, the parties agree that Bozeman's claim for long-term disability benefits was ultimately denied after LINA determined that Bozeman's medical documentation did not support his claim that he was unable to perform any occupation, as evidently required by the terms of the policy.  Bozeman appealed this

decision, and his appeals were also denied. He then filed the instant suit, based on diversity jurisdiction, arguing that in denying his claim and failing to pay him benefits, LINA violated various provisions of the Louisiana Insurance Code. In answering the suit, LINA contended that the policy under which Bozeman claims benefits is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") because the policy is part of an employee welfare benefits plan established by Scientific Games. Thus, LINA asserts that Bozeman's state law claims and remedies are preempted by ERISA. Subsequently, both parties filed the instant motions for partial summary judgment.

In his motion for partial summary judgment, Bozeman submits that ERISA does not preempt his state law claims because he claimed disability benefits under his individual policy, rather than Scientific Games's group policy. According to Bozeman, the individual policy is not a policy governed by ERISA because Scientific Games did not manage, contribute to, or profit from the policy, and further, that the plan satisfies ERISA's "safe harbor" provisions. As such, Bozeman contends that state law, rather than ERISA, governs this matter. LINA counters that ERISA preempts Bozeman's claims because a claim made under a conversion policy (a policy that has been converted from group to individual) should be governed by ERISA. In addition, LINA submits that in this case, Bozeman's claim for disability

benefits relates to a condition that arose while he was still covered under the group policy, thus the group policy should control.

II.    Motion for Summary Judgment.

"Standard summary judgment rules control in ERISA cases." Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 225 (5th Cir. 2004). Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record

showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

III.    Analysis.

In this case, the Court is called upon to determine whether Bozeman's claims are preempted by ERISA. ERISA comprehensively regulates employee benefit plans. See Aetna Health Inc v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488 (2004). "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Id. (citing Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895 (1981)). "ERISA preempts all state laws that 'relate to' employee benefit plans. Accordingly, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Menchaca v. CNA Group Life Assur. Co., 331 F.App'x 298, 304 (5th Cir. 2009). The ultimate question is whether the employee benefit plan at issue is an ERISA plan at all. See Hansen v.

Cont'l Ins. Co., 940 F.2d 971, 976 (5th Cir. 1991). If it is not, then ERISA does not apply. See id. Therefore, the task before the Court is to decide: (1) what policy was implicated by Bozeman's claim for disability-- the group policy or the individual policy-- and (2) whether that policy was governed by ERISA.

The parties agree that Bozeman did not make a claim for benefits until 2007, a year or more after his group policy had been converted to an individual policy. As such, Bozeman asserts his claim was made under the individual policy. LINA, however, contends that because Bozeman was diagnosed with HIV while he was covered by the group policy, a fact which is disputed, the group policy automatically controls. LINA provides no authority-- neither jurisprudence nor language from the policy itself-- to support the proposition that the date a beneficiary is diagnosed with an illness is the date that governs his claim for disability benefits. Moreover, the Court can find no such authority. Although the date an illness or condition is diagnosed might be significant, it does not appear to be dispositive. Plainly, one may work for any period of time before his medical illness or injury disables him, if that happens at all. In other words, after being diagnosed with a medical illness or injury, one may still perform the duties of one's job without an effect on job performance. The crucial inquiry, it seems, is when does

the medical illness or injury become a disability, rendering the person medically disabled.

Furthermore, in ERISA cases, a cause of action typically accrues at the time benefits are denied, Hall v. Nat'l Gypsum, 105 F.3d 225, 230 (5th Cir. 1997), "and the plan in effect when the decision to deny is controlling." See Hargrave v. Commonwealth Gen. Corp. Long Term Disability Plan, 2011 WL 1834490, *4 & n. 12 (5th Cir. 2011); see also Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 226 n.6 (5th Cir. 2004) (suggesting that the controlling plan is the one in effect at the time benefits are denied); Hackett v. Xerox Corp., 315 F.3d 771, 774 (7th Cir. 2003); McWilliams v. Metro. Life Ins. Co., 172 F.3d 863, *2 (4th Cir. 1999); Bolton v. Constr. Laborers Pension Trust, 56 F.3d 1055, 1058 (9th Cir. 1995); Ward v. Plains Exploration & Prod. Co., 380 F.Supp.2d 817, 820 (S.D.Tx. July 29, 2005); Singleton v. San Jacinto Methodist Hosp., 2003 WL 22303420, *2-3 (S.D.Tx. July 14, 2003); Klecher v. Metro. Life Ins. Co., 2003 WL 21314033, *4 (S.D.N.Y. June 6, 2003). However, the Court is cognizant of the fact that in ERISA cases, a plan participant's right to benefits is tied tightly to the provisions of the insurance plan itself.

This Court will not speculate as to the provisions that exist in the instant policy, if any, that may shed light on the significance of the date Bozeman was diagnosed with HIV versus the date on which he allegedly became disabled. Other

relevant issues about which the Court will not speculate include: (1) how disability is defined by the terms of the agreement; (2) whether, in order to be covered by the group policy, one's determination of disability must arise while still employed; and (3) in this case, when did Bozeman's medical condition(s) allegedly render him unable to work. Further, although the parties agree Bozeman was diagnosed with HIV, the Court is unclear as to whether that alone was the condition underlying his claim for disability benefits, or whether, as he submits in his summary judgment pleadings, his other medical conditions, including Type II diabetes, hypertension, depression, neuropathy, and herpes zoster also contributed to his belief or to a physician's finding of disability. Plainly, there are a number of material factual issues that prevent the Court from making a determination of the questions presented.

Because the Court cannot decide the threshold issue based on the record before it, it likewise cannot determine whether the plan constitutes an ERISA plan. The Fifth Circuit Court of Appeals employs a three-prong test to determine whether a plan constitutes an ERISA plan. See Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 279 (5th Cir. 2008). "To be an ERISA plan, the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the

intent to benefit employees." Id.  With respect to the second inquiry, the Department of Labor's safe harbor provisions exclude plans from ERISA where (1) the employer does not contribute to the plan; (2) participation in the plan is voluntary; (3) the employer's role is limited to collecting premiums, remitting payments to the insurer, and publicizing (yet not endorsing) the plan; and (4) the employer receives no benefit from the plan. See 29 C.F.R. § 2510.3-1(j).  For the plan to fall within the safe harbor provisions, each of these four requirements must be satisfied.

In the instant case, Bozeman contends that his disability policy is not governed by ERISA because the policy was paid for by him, individually, that Scientific Games had no role in managing the policy, and that Scientific Games did not profit from the policy.  Thus, Bozeman argues that the plan is not a "welfare benefit plan."  Yet, even if it is, he submits it is saved by the safe harbor provisions. However, Bozeman failed to submit any affidavits or other competent evidence to support his analysis of the pertinent ERISA and safe harbor factors, and his statements alone are conclusory.

Unfortunately, LINA neglected to address this line of inquiry altogether, despite the fact that the main thrust of Bozeman's motion for partial summary

judgment is that the individual policy is <u>not</u> governed by ERISA.[3]  Instead, LINA urges the Court to find that because the conversion policy stemmed from a group policy, then the conversion policy must be governed by ERISA.  The flaw in this argument lies not only in the fact that the appellate courts are currently split on the appropriate characterization of a conversion policy, but also that LINA simply assumes, without legal or factual support and/or analysis, that the Scientific Games group policy was an ERISA plan to begin with. The Court cannot accept such broad assumptions. <u>See Gahn v. Allstate</u>, 926 F.2d 1449, 1452-53 (5th Cir. 1991) (reversing grant of summary judgment because the record did not contain specific findings of fact necessary to apply the ERISA analysis).

In sum, the Court lacks the factual information necessary to decide the issues before it.  In order to do so, the Court would need evidence relevant to the following issues:  (1) determining which policy was implicated by Bozeman's claim for disability; (2) the content of that policy; (3) the factors set forth in the safe harbor regulation; (4) the factors used to determine whether the policy is part of an employee benefit plan subject to ERISA; and (5) any other fact that will allow for a resolution of the questions presented.

---

[3] It is particularly troubling to the Court that LINA's pleadings are wholly devoid of any mention or analysis of the individual policy and whether it would be governed by ERISA.  Indeed, LINA ignores that subject entirely.

IV.    Conclusion.

For the foregoing reasons, the cross-motions for partial summary judgment [Record Documents 14 and 17] be and are hereby **DENIED**, without prejudice, due to the insufficiency of the current record and the genuine issues of material fact that cannot be resolved at this time.  The Court will schedule a conference with the parties to set a hearing date on the issue of whether Bozeman's state court claim is preempted by ERISA. The Court will also outline a schedule which would allow the parties to conduct discovery relevant to determining what policy governs Bozeman's claim for benefits (the individual policy or the group policy) and whether said policy is governed by ERISA, taking into account the three-prong test employed by the Fifth Circuit, as well as the four safe harbor provisions.  An order consistent with the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** on this 14th day of September, 2011.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE